## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff/Respondent, | |
| v. | No. 14-20071-02-JAR |
| MARIO SAUCEDO-AVALOS, | |
| Defendant/Petitioner. | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Mario Saucedo-Avalos's *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 and Memorandum in Support (Docs. 372, 373). The Government has responded,[1] and Petitioner has replied.[2] For the reasons explained in detail below, the Court denies Petitioner's motion without an evidentiary hearing.

## I.     Factual and Procedural Background

On July 24, 2015, Saucedo-Avalos entered a guilty plea to Count 1 of a Superseding Indictment, conspiracy to possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2.[3]

The Presentence Investigation Report ("PSR") calculated Saucedo-Avalos' base offense level at 38, with a two-level increase for possession of a weapon under § 2D1.1(b)(2), a two-

---

[1]Doc. 377.

[2]Doc. 381.

[3]Docs 176–77.

level increase for unlawful importation of a controlled substance under § 2D1.1(b)(5), a three-level increase for his role in the offense as a manager/supervisor of five or more persons under § 3B1.1(b), and a three-level decrease for acceptance of responsibility for a total offense level of 42.[4]  Saucedo-Avalos received a criminal history score of I, which resulted in a Guidelines range of 360 months to Life imprisonment.  On October 21, 2015, this Court sentenced Saucedo-Avalos to 360 months' imprisonment.[5]

Saucedo-Avalos filed a direct appeal to the Tenth Circuit Court of Appeals, raising three issues: (1) the validity of the plea agreement; (2) whether this Court made sufficient sentencing findings under *United States v. Biglow*;[6] and (3) whether this Court's rulings on pretrial motions were correct and whether those rulings influenced Saucedo-Avalos' decision to forgo jury trial.[7] The Tenth Circuit granted the government's motion for enforcement of appeal waiver and dismissed the appeal.[8]

This timely § 2255 motion followed, raising four claims of ineffective assistance of counsel.[9]  Saucedo-Avalos was represented in the underlying proceedings by counsel Mark L. Bennett, Jr.  In his declaration in support of his motion, Petitioner states "from the very beginning contact and communication with attorney Bennet [sp] seemed to get more complicated as the case progressed."[10]  Saucedo-Avalos states that Bennett visited him six times while he was housed at CCA.  During the first three visits, the interpreter was present and they were able to

---

[4]Doc. 217.

[5]Doc. 222.

[6]554 F. App'x 679 (10th Cir. 2014).

[7]*United States v. Saucedo-Avalos*, 645 F. App'x 639, 641–42 (10th Cir. 2016).

[8]*Id.* at 644.

[9]28 U.S.C. § 2255(f).

[10]Doc. 373, Ex. 1, ¶ 4.

communicate "very generally about the federal criminal process."[11]  During the last three visits, Saucedo-Avalos claims an interpreter was not present and communication was "extremely difficult because attorney Bennet[t] does not speak Spanish and my English language skills are very poor."[12]  Saucedo-Avelos avers that during one of these visits without an interpreter present, Bennett showed him some papers and tried to explain what they were and what they said. Bennett asked him if he understood what he was attempting to explain and Saucedo-Avelos told him, "no not much."[13]  Saucedo-Avelos states that he "came away from that meeting with the understanding that he had a deal for me of no more than ten (10) years.  I asked if he was sure that I would get ten (10) years and he said 'possibly less.'"[14]

Saucedo-Avalos further states that during a consultation with Bennett on June 22, 2015, again without an interpreter present, Bennett showed him a table of numbers and said that he calculated that he would receive a sentence of between seven and eight years.[15]  Bennett read what Saucedo-Avalos believes was the Plea Agreement, and asked what he thought.  Saucedo-Avalos told Bennett that he did not understand what had been read to him and asked Bennett if what he wanted him to sign meant that he would receive no more than ten years, and that he understood Bennett's reply to confirm that if he signed the Plea Agreement he would receive no more than ten years.[16]  Based on that understanding, Saucedo-Avalos signed the Plea Agreement.

Saucedo-Avalos states that at no time did Bennett advise him of his Consular rights under Article 36 of the Vienna Convention on Consular Relations ("VCCR"), where as a Mexican

---

[11] *Id.* ¶ 6.

[12] *Id.* ¶ 7.

[13] *Id.* ¶ 8.

[14] *Id.*

[15] *Id.* ¶ 9.

[16] *Id.* ¶¶ 9, 10.

citizen, he had the right to contact the local Mexican Consulate or Embassy, nor did he advise that the government was required to notify the Mexican Consulate upon his initial arrest and detention.[17]  Saucedo-Avalos states that had he known of those rights, he would have contacted the Mexican authorities for assistance in his criminal defense.[18]

Saucedo-Avalos further states that before his change of plea hearing, co-defendant "Octavio Valdes" gave him and co-defendant Juan Lopez letters where he admitted that he had lied about the level of Saucedo-Avalos' involvement in the conspiracy.[19]  He gave that letter to Bennett during one of the first three visits when Bennett was present.[20]

Saucedo-Avalos states that before his change of plea hearing, Bennett instructed him to only answer "yes" or "no" and to say "yes" when the judge asked him if he was guilty, and that he followed those instructions.[21]  Saucedo-Avalos states that Bennett never informed him in advance of his sentencing date and he was thus unable to prepare for his allocution.[22]  He told Bennett on the day of sentencing, and without an interpreter present, that he was "not ready," and that he understood Bennett to say that "everything will be fine."[23]  Saucedo-Avalos states that the headphones were not functioning well during the sentencing hearing on October 21, 2015, and he could not understand what was said much of the time.[24]  He claims he did not discover he had been sentenced to 360 months until after the proceeding and had he known, he would have

---

[17] *Id.* ¶ 12.

[18] *Id.* ¶ 13.

[19] *Id.* ¶ 14.

[20] *Id.*

[21] *Id.* ¶ 15.

[22] *Id.* ¶ 16.

[23] *Id.*

[24] *Id.* ¶ 17.

objected because he understood the Plea Agreement to limit his sentence to ten years.[25]
Saucedo-Avalos concludes that he feels he "was mislead and even abandoned to some degree by
my own attorney," and that his "reliance on the discussions and mis-advice of my attorney very
clearly worked a substantial prejudice to myself and my family.  My trust in him was misplaced
and a clear mistake."[26]

The Government submits the affidavit of counsel Mark L. Bennett, Jr., who was
appointed to represent Saucedo-Avalos in his underlying criminal proceedings after previous
counsel withdrew.[27]  Bennett states that he obtained and reviewed all of the pretrial discovery
that had previously been provided to previous counsel and discussed in great length and detail
the content of that discovery with Saucedo-Avalos.  Bennett subsequently filed thirteen separate
pretrial motions with supporting memoranda, which were subsequently considered and ruled on
by the Court.  In addition, Bennett met with Saucedo-Avalos on twelve separate occasions for a
total of 18.2 hours for the purpose of discussing his case, the evidence against him, and his
determination to attempt to resolve the charges against him by way of an agreed-upon plea
agreement or by trial.

Bennett discussed with Saucedo-Avalos the pros and cons of entering a plea based upon
cooperation as well as any potential retaliations that might occur if he provided assistance to the
government.  Saucedo-Avalos advised Bennet that he understood both the pros and cons of
cooperation and ultimately determined that he wanted to pursue a plea agreement that would take

---

[25]*Id.*

[26]*Id.* ¶¶ 18, 19.

[27]Doc. 377, Ex. A. *See United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) (holding when a habeas
petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to
communications with his attorney necessary to prove or disprove the claim).

his potential cooperation into account.  Bennett then discussed a potential plea agreement with

the government.

Subsequently, however, Saucedo-Avalos declined to cooperate and/or testify on behalf of

the government.  When asked why, Saucedo-Avalos advised Bennett that several individuals,

whom he declined to identify, had threatened to kill his family members if he were to cooperate

with the government and provide any information whatsoever to the Federal or State authorities.

Bennett characterizes as "disingenuous and untrue" Saucedo-Avalos' claim that he was

prejudiced by virtue of counsel's failure to obtain and use a translator in the course of his

representation.[28]  Bennett states,

> While Mr. Saucedo-Avalos initially chose to have a translator present during
> attorney client meetings and conferences with counsel, he later advised counsel that
> a translator was not necessary and that he was able to fully understand and
> comprehend both the English language and counsel's advice and information
> during said meetings and conferences.  As a result thereof, he specifically directed
> counsel to cease the use of an interpreter from that point on and counsel agreed to
> do so.[29]

Bennett states that based upon several hours of conversation with his client, both with

and without an interpreter present, it was "quite clear" to him that Saucedo-Avalos fully

understood English and the information, questions, and advice received from Bennett.[30]  Bennett

states his client participated, asked appropriate and intelligent questions, and "without question"

fully understood and participated in the discussions both when an interpreter was used and then

later after he directed an interpreter not be present.[31]  "At no time after Mr. Saucedo-Avalos

directed counsel to cease using an interpreter did he ever indicate to counsel that he could not or

---

[28]*Id.* ¶ 9.

[29]*Id.*

[30]*Id.* at ¶ 10.

[31]*Id.*

did not understand any of the conversations that occurred between he and his attorney Mark L.

Bennett, Jr. in the absence of an interpreter."[32]

With respect to the conversation on June 22, 2015, which occurred without an interpreter

present, Bennett states:

> [Saucedo-Avalos] is also correct in his statement that he and I discussed his potential sentence. However, what he has failed to state or reveal is that at the time the discussion occurred, I specifically advised him that any potential sentence reduction that he might receive would be dependent upon the nature and extent of his cooperation and/or cooperating testimony which he would be willing to provide to the government during the prosecution of his co-defendants and/or any other individuals that had been or were involved in any drug trafficking activities in the Kansas City area. He acknowledged on more than one occasion that he fully understood that qualification.[33]

With respect to Saucedo-Avalos' claim that Bennett told him he had a deal for him of ten

years or possibly less, Bennett states:

> What he was advised was that "at best" I was hopeful that I would be able to persuade the government to agree to a 10 year sentence or possibly less in return for his cooperation and testimony in the trial of his co-defendants. However, I also warned him that there was no guarantee that such a sentence could be obtained since that determination would rest in the sole discretion of the government, and they [sic] would make its decision based upon its determination as to the value of the information provided.
>
> Throughout all of the discussions that were had with Mr. Saucedo-Avalos with regard to a plea and any possible sentence I did, on numerous occasions, advise him that I could not insure any particular sentence if he were to cooperate, but rather that his sentence would be dependent upon (1) the nature and extent of his cooperation; (2) his willingness or unwillingness to fully cooperate and provide truthful and incriminating testimony in the prosecution of his co-defendants and/or other individuals involved in drug trafficking in the Kansas City area; and (3) the evaluation of his testimony and its validity by the prosecutor handling the case. He indicated that he fully understood this and was willing to proceed with a plea on that basis.[34]

---

[32] *Id.*

[33] *Id.* ¶ 13.

[34] *Id.* ¶ 14.

After Saucedo-Avalos told Bennett that he would refuse to cooperate because of the threats against his family, Bennett attempted to persuade him to continue with the cooperation, but he remained firm to his refusal to provide information and/or testimony.  As a result, Saucedo-Avalos was unable and unwilling to provide the assistance necessary for the government to agree to a reduced sentence, and is what, "in counsel's opinion, resulted in the government failing and refusing to recommend a much more lenient sentence than what the Defendant had hoped for and ultimately received."[35]

Bennett denies that at any time during his representation of Saucedo-Avalos did counsel "abandon" him.  "Rather, Mr. Saucedo-Avalos 'abandoned' what he had told counsel he was willing to do and refused and neglected to provide the requisite information, cooperation and testimony which was a condition precedent to him receiving the benefits of the plea agreement."[36]  Bennett believes that had Saucedo-Avalos honored his cooperation agreement with the government, it would have honored its agreement and he would have received a substantially lesser sentence than he ultimately received.

## II.    Standard

Section 2255 entitles a federal prisoner to relief if the court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[37]  The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files

---

[35]*Id.* ¶ 15.

[36]*Id.* ¶ 16.

[37]28 U.S.C. § 2255(b).

and records of the case conclusively show that the prisoner is entitled to no relief."[38]  A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[39]  An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[40]

The Sixth Amendment guarantees that "[i]n all criminal prosecution, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[41]  A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[42]  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[43]  To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[44]  This standard is "highly demanding."[45]  Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[46]  In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of

---

[38]*United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)).

[39]*In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[40]*See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996) ("[t]he allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1143, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that are merely conclusory in nature and without supporting factual averments).

[41]U.S. Const. amend. VI; *see Kansas v. Ventris*, 556 U.S. 586 (2009).

[42]466 U.S. 668 (1984).

[43]*Id.* at 688.

[44]*Id.* at 690.

[45]*Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[46]*Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

reasonable professional assistance."[47]  Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error, and "every effort should be made to 'eliminate the distorting effects of hindsight.'"[48]

Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[49]  To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[50]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[51]  This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[52]

A defendant is entitled to the effective assistance of counsel during plea negotiations.[53] "The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness."[54]  "To show prejudice in the guilty plea context, the defendant must establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial.'"[55]

---

[47]*Strickland*, 466 U.S. at 687.

[48]*Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[49]*Strickland*, 466 U.S. at 687.

[50]*Id.* at 694.

[51]*Id.*

[52]*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[53]*Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012).

[54]*Id.* at 163 (internal quotation marks omitted).

[55]*Heard v. Addison*, 728 F.3d 1170, 1176 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

In all events, a defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[56]  "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[57]

## III.    Discussion

Saucedo-Avalos raises four claims that trial counsel was ineffective.  The Court addresses each in turn.

### A.  Ground One:  Counsel was ineffective for failing to investigate Mexican Consulate notice

Saucedo-Avalos, a Mexican national, claims trial counsel was ineffective for failing to determine if the government had notified the Mexican Consulate of his arrest, indictment, detention, or conviction.  Article 36(1)(b) of the Vienna Convention states that the authorities of a "receiving state" shall, without delay, inform any detained foreign national of his right to have the consular post of the "sending state" notified of his detention.  Article 36(a)(c) gives consular officers the right to visit and correspond with detained foreign nationals and to arrange legal representation.  The Tenth Circuit has not decided whether Article 36 of the Vienna Convention gives rise to any individually enforceable rights, but has only "assume[d] without deciding that the Vienna Convention confers individually enforceable rights."[58]

---

[56]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[57]*Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

[58]*Gandy v. Barber*, 641 F. App'x 835, 838–39 (10th Cir. 2016), *cert. denied*, 132 S. Ct. 1334 (2017), referencing *Medellin v. Texas*, 552 U.S. 491, 506 n.4 (2008) (assuming without deciding that Article 36 of the Vienna Convention grants foreign nationals certain rights that are individually enforceable).

Even assuming, however, that the Vienna Convention created individually enforceable rights to consular notification, Saucedo-Avalos fails to show that failure of counsel to advise him of such rights prejudiced him in any manner.  Saucedo-Avalos alleges that with the assistance of the Mexican Consulate, "he would have easily been aware that his attorney should have provided an interpreter at all times relevant when discussing whether or not to plea or proceed to trial and his clear understanding of the charges against him."[59]  That allegation is insufficient to demonstrate prejudice under the *Strickland* standard.  As discussed above, Saucedo-Avalos must demonstrate that but for counsel's error, he would have insisted upon going to trial.[60]  Saucedo-Avalos' allegation that the Mexican Consulate could have assisted with choices related to entry of his guilty plea is inadequate.  Further, his allegation that he did not understand his plea agreement due to the lack of an interpreter is belied by the record, as discussed in detail *infra*, section B.  And, at both the change of plea hearing and the sentencing hearing, an interpreter was present and sworn to ensure Saucedo-Avalos had full understanding of the proceedings.[61]  Because Saucedo-Avalos cannot satisfy *Strickland's* prejudice prong, the Court finds he is not entitled to relief on this claim of ineffective assistance of counsel.[62]

### B.  Ground Two: Coerced, Unknowing, and Involuntary Plea

Saucedo-Avalos contends that his plea was coerced, unknowing, and involuntary due to ineffective assistance of counsel because (1) an interpreter was not present during plea discussions, (2) he was "led to believe and understand" the maximum sentence he would receive

---

[59] Doc. 373 at 15.

[60] *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005); *see Strickland*, 466 U.S. at 687.

[61] Docs. 280, 281.

[62] *See United States v. Munoz*, No. 05-147-TCK, 2010 WL 3732173, at *5 (N.D. Okla. Sept. 20, 2010) (denying ineffective assistance claim where petitioner failed to demonstrate prejudice stemming from counsel's alleged failure to investigate alleged violation of Article 36 of Vienna Convention).

was ten years, and (3) he did not understand what he was pleading to.  "A defendant's guilty plea must be knowing, voluntary, and intelligent.  To enter a plea that is knowing and voluntary, the defendant must have a full understanding of what the plea connotes and of its consequence."[63] "Rule 11 of the Federal Rules of Criminal Procedure prescribes procedures designed to ensure a plea is made knowingly and voluntarily."[64]  Thus to determine whether a plea agreement is knowing and voluntary, the Tenth Circuit considers "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and whether the trial court conducted "an adequate Federal Rule of Criminal Procedure 11 colloquy."[65]

Although there is a factual dispute regarding the use of an interpreter while meeting with Bennett at CCA, Saucedo-Avalos' claims that he did not understand and was misled about the maximum sentence he was facing are not supported by the record.  As Bennett sets forth in his affidavit, he initially negotiated a plea agreement with the hope that the government would agree to a ten-year sentence in return for his cooperation and testimony in the trial of his co-defendants.  Saucedo-Avalos initially agreed to cooperate with the government, but later declined after receiving threats against his family.  Bennett's version of what transpired is supported by the record, which reflects that Saucedo-Avalos was set to plead guilty in July 2015, but counsel advised the Court that he was no longer willing to cooperate and was thus unable to

---

[63]*United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002) (citations and internal quotation marks omitted).

[64]*United States v. Elias*, 937 F.2d 1514, 1517 (10th Cir. 1991).

[65]*United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004); *United States v. Rollings*, 751 F.3d 1183, 1187–90 (10th Cir. 2014).

enter into that plea agreement.[66]  Bennett then negotiated a revised plea agreement with no cooperation, which Saucedo-Avalos entered into on July 24, 2015.[67]

Absent a believable reason justifying departure from their apparent truth, the accuracy and truth of a defendant's statements at a Rule 11 proceeding at which his plea is accepted are conclusively established.[68]  The record of the plea hearing contains nothing to suggest Saucedo-Avalos' plea was either unknowing or involuntary, or that he was unaware of the consequences of his plea.  The plea colloquy indicates that Saucedo-Avalos, with the aid of an interpreter, acknowledged that he had gone over the charges with counsel, that he understood what he was charged with, that he discussed the evidence that the government had against him with counsel, and that he and counsel had discussed the plea agreement together.[69]  Saucedo-Avalos indicated that he was satisfied with the advice and representation he had received from counsel, that it was his decision to enter into the plea with the government, that no one pressured, threatened, or coerced him to make that decision, and that the decision to plea was made voluntarily and of his own free will.[70]  The Court questioned Saucedo-Avalos's understanding of the sentencing range of a mandatory minimum of ten years and a maximum of life imprisonment, and explained how enhancements and cooperation could have an impact on the sentence, and he indicated he understood.[71]

---

[66]Docs. 136, 281 at 69.

[67]Docs. 175, 177.

[68]*United States v. Glass,* 66 F. App'x 808, 810 (10th Cir. 2003); *United States v. Jones*, 124 F.3d 218 (10th Cir. 1997).

[69]Doc. 280 at 4–5.

[70]*Id.* at 5–7.

[71]*Id.* at 17–19.

On direct appeal, the Tenth Circuit also rejected Saucedo-Avalos' claim that he did not understand the count he was pleading to.  After noting he was assisted by an interpreter at the plea hearing, it concluded: "Mr. Saucedo-Avalos never indicated his understanding of the proceedings was compromised by language difficulties. On the contrary, he affirmatively represented that he was able to understand the interpreter."[72]  The court also rejected his argument that due to the lack of an interpreter during his discussions with counsel, he developed a belief that he was pleading guilty in exchange for a ten-year maximum sentence:

> The deficiency in this argument is that Mr. Saucedo-Avalos' alleged belief was clearly refuted at the plea hearing, during which the district court explained to him, with the assistance of an interpreter, that the statutory sentencing range was 10 years to life, . . . and that the court was free to sentence him unconstrained by any recommendations from the parties.  He now contends . . . that when the court asked him specifically whether he understood the potential sentencing range, he did not just answer "Yes," as the transcript reflects, but went on to add: "but my lawyer has assured me that I would be sentenced to no more than 10 years." Even if supplemented with this unsubstantiated interpolation, Mr. Saucedo-Avalos' contention regarding an erroneous sentencing expectation developed in discussion with counsel still would not render his plea and appeal waiver invalid. Given the district court's explanation about the sentencing range and its authority to impose a sentence within that range unconstrained by the parties' recommendations, Mr. Saucedo-Avalos can claim only that, when he pled guilty, "[c]ounsel may have estimated, and [he] may have expected, a sentence substantially less than the [thirty] years imposed"—circumstances this court has repeatedly held "do not invalidate a plea or render it involuntary."[73]

Even if counsel's performance was unreasonable, however, Saucedo-Avalos cannot satisfy the prejudice prong of the *Strickland* test to prevail on his claim.  To prevail on the prejudice prong in the guilty plea context, a defendant must show that there is "a 'reasonable probability' that he 'would not have pleaded guilty and would have insisted on going to trial' but

---

[72]*United States v. Saucedo-Avalos*, 645 F. App'x 639, 643 (10th Cir. 2016).

[73]*Id.* at 643–44 (citing *Thomas v. Kerby*, 44 F.3d 884, 886 (10th Cir. 1995) (internal citations omitted)).

for counsel's errors."[74]  The court is required to make a holistic inquiry into all the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial.[75]  Mere allegations that the petitioner would have insisted on going to trial, although necessary, is insufficient.[76]  "Proof of prejudice requires a petitioner to show that 'a decision to reject the plea bargain would have been rational under the circumstances.'"[77]  To determine rationality, the court should assess "objective facts specific to a petitioner, such as age, the length of the sentence he faced under the terms of the plea deal, the prospect of minimizing exposure to other charged counts, and so on."[78]  The Tenth Circuit "remain[s] suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors."[79]  While a defendant need not show that he would have prevailed at trial, his prospects of succeeding inform the court's view whether he in fact would have gone to trial absent the alleged errors.[80]  The strength of the government's case is the best evidence whether defendant would in fact have changed his plea and insisted on going to trial.[81]

In light of the extensive agreed factual basis in the plea agreement, Saucedo-Avalos has not shown a reasonable probability that but for counsel's alleged conduct, the results of the plea proceeding would have been different, that is, he would not have agreed to plead guilty to the

---

[74]*Heard v. Addison*, 728 F.3d 1170, 1175–76 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

[75]*Id.* at 1183.

[76]*Id.* at 1184.

[77]*Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

[78]*Id.* at 1183.

[79]*Id.* at 1184.

[80]*United States v. Triplett*, 263 F. App'x 688, 690 (10th Cir. 2008); *see United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002).

[81]*See Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985).

drug conspiracy charge.[82]  Saucedo-Avalos does not dispute that a jury likely would have convicted him on this charge, and the record does not reflect any viable defense to the charges in Count 1.  As part of the plea, Saucedo-Avalos acknowledged a four-page single-spaced factual basis for the plea that set out in detail how he was involved and actively engaged in the conspiracy to distribute more than 50 grams of methamphetamine.[83]  This evidence was supported by surveillance and statements of co-conspirators, and illustrated the scope of the drug conspiracy and that Saucedo-Avalos exercised a great degree of control in the drug trafficking organization.  Although the benefits he received from the plea agreement were certainly less than if he had cooperated, he received a three-level reduction for acceptance of responsibility and a bottom guideline range sentence of 360 months instead of life imprisonment.  In light of the evidence and benefits received under the plea agreement, Saucedo-Avalos has not shown how a decision to reject the plea agreement would have been rational under the circumstances.[84]  Accordingly, the Court denies his second claim that counsel was ineffective on these grounds.

### C.  Ground Three: Failure to Investigate Case, Interview Witnesses, or Offer Defense Strategy

Saucedo-Avalos next claims that he entered a "coerced" plea because counsel refused to investigate the case, interview witnesses, or offer any defense strategy other than pleading guilty. He contends that "try as he did . . . could not get requisite legal advice or discussion of defense strategy."[85]  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a

---

[82]*See United States v. Young*, 206 F. App'x 779, 785 (10th Cir. 2006).

[83]Doc. 177 at 2–5.

[84]*See Padilla*, 559 U.S. at 372.

[85]Doc. 373 at 20.

particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[86]

Saucedo-Avalos does not identify witnesses that should have been interviewed, what investigative strategy should have been employed, or how it would have changed the outcome of the case. He only refers to a letter he gave Bennett that he claims he received from "Octavio Valdes" that purportedly retracts statements co-defendant Jesus Octavio Valdez-Aguirre made detailing Saucedo-Avalos' involvement in the drug conspiracy. The government attached the letter to its response, which is assumed to be the letter Saucedo-Avalos eludes to. The letter is undated, unsworn, and unverified and in Spanish; Bennett had it translated by the Court interpreter:

> I, Jesus Octavio Valdez,
>
> I retract any statement made on September 5th regarding Mario Sausedo but I do not take responsibility for any illegal act or any thing for which he may be involved legally CCA.
>
> [illegible signature] [87]

To counter Saucedo-Avalos' argument, the government notes that co-defendant Valadez-Aguirre voluntarily signed a plea agreement that implicated Saucedo-Avalos as a co-conspirator.[88] Bennett's tactical choice not to pursue the letter as evidence or to call Valdez-Aguirre as a witness is reasonable in light of the fact that Valdez-Agurirre signed a sworn representation to the Court pointing to Saucedo-Avalos as a co-conspirator. Moreover, with no indication that Valdez-Aguirre would have been willing to violate his plea agreement or to waive

---

[86]*Strickland*, 446 U.S. at 691.

[87]Doc. 377, Ex. B.

[88]Doc. 182-1.

his Fifth Amendment rights and testify on Saucedo-Avalos' behalf, the proffered letter is purely speculative.

Saucedo-Avalos' conclusory complaints about Bennett's lack of pretrial investigation and trial strategy are also without merit. As Bennett details in his affidavit, he met with Saucedo-Avalos on twelve separate occasions, where he explained the pros and cons of a plea agreement and the content of discovery provided by the government. Indeed, it is undisputed that Bennett filed thirteen separate pretrial motions, including motions for: disclosure of exculpatory evidence; requiring the government to produce Grand Jury transcripts; a Bill of Particulars; disclosure of confidential informants; review of intent to offer Rule 404(b) evidence at trial; in limine to exclude evidence at trial; to produce notice of co-conspirator statements; to exclude *Bruton* evidence; and to join in co-defendant's motion to suppress.[89] Nor does Saucedo-Avalos claim or demonstrate prejudice from counsel's purported inefficient representation. This claim is denied.

### D.  Ground Four: Failure to Object to Sentencing Enhancement

Finally, Saucedo-Avalos claims counsel was ineffective for failing to challenge the aggravating role enhancement for his role as a leader/organizer at sentencing. Saucedo-Avalos asserts that "this could have been successfully eliminated had his attorney provided the Court with the letter from Octavio Valdes."[90] This argument is without merit.

The record shows that Bennett did in fact object to the three-level enhancement for being a manager or supervisor. The Presentence Investigation Report specifically included that the defendant "objects to paragraph 49, which adds a 3 level enhancement for being a manger or

---

[89] *See* Docs. 87, 88, 90, 92, 94, 98, 100, 102, 104, 118.

[90] Doc. 373 at 22.

supervisor, for the reason that the totality of the evidence does not indicate that he played such a role in the alleged conspiracy."[91]  Bennett also argued that Saucedo-Alvaros was eligible for a two-level minor role decrease.[92]  Bennett presented oral argument in support of his objection to the role enhancement at the contested sentencing hearing held October 21, 2015.[93]  Counsel asked the Court not to impose the three-level role enhancement and sought a minor role adjustment for Saucedo-Avalos instead.[94]  Saucedo-Avalos's claim is based on an inaccurate account of the sentencing proceedings and is thus denied.

## IV.    Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.[95]  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.[96]  To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[97]  For the reasons stated above, the Court finds that Saucedo-Avalos has not satisfied this standard and, therefore, denies a certificate of appealability as to its ruling on his § 2255 motion.

---

[91]Doc. 217 at 27.

[92]*Id.*

[93]Doc. 281 at 67–68.

[94]*Id.*

[95]The denial of a § 2255 motion is not appealable unless a circuit justice or a district judge issues a certificate of appealability.  Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[96]28 U.S.C. § 2253(c)(2).

[97]*Saiz v. Ortiz,* 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)).

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Mario Saucedo-Avalos' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 372) is **denied** without evidentiary hearing; Saucedo-Avalos is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: <u>May 22, 2018</u>

           S/ Julie A. Robinson
           JULIE A. ROBINSON
           CHIEF UNITED STATES DISTRICT JUDGE